## GEORGE A. HART v. FRANK FIRZLAFF.

*Abandonment of contract—Recovery—Charge to jury.*

An examination of the *entire* opinion being essential to a proper understanding of the points decided, reference is had to said opinion for a statement of the same.

Error to Manistee. (Judkins, J.) Argued October 10, 1887. Decided November 10, 1887.

Assumpsit. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Ramsdell & Benedict,* for appellant.

*A. J. Dovel,* for defendant.

SHERWOOD, J. The plaintiff in this case is a dealer in real estate, and resides at Manistee, and has a set of abstract books showing the titles to lands in Manistee county. He is a dealer in pine lands, and for several years has been accustomed to procure examinations of pine timber, and in 1877 and since then has had men in the woods to make such examinations.

The defendant is a hotel keeper, and lives in Manistee, where he has resided many years.

In the spring of 1882, the plaintiff claims, after he had looked up the land and estimated the timber thereon, he negotiated a contract with the Jackson, Lansing & Saginaw

Railroad Company in behalf of the defendant, for the purchase of 1,956.24 acres of land, lying in the counties of Ogemaw and Roscommon, and secured the execution of a written contract to the defendant therefor. The terms of the contract were that the defendant agreed to pay for the land $39,000; $3,000 at the date of the contract, and the balance in five installments, extending through a period of three years.

The plaintiff further claims that he looked up said lands, and estimated the timber thereon, and negotiated the contract in behalf of the defendant, for their purchase, under an agreement with the defendant that, in consideration of these things, and the plaintiff's efforts to sell said lands, the defendant should furnish the money to make the payment for the lands, which were to be sold as soon as purchasers could be found; and when the sales were made the defendant was to receive back the money he had paid on the contract, with interest, and the profits made in the transaction were to be equally divided between them.

Under this arrangement the defendant paid the first $3,000, and, when the next payment became due, the agreement was modified between the parties, by an agreement that they should jointly own the land, and jointly raise the money at the bank to make the payments upon the contract; that defendant should pay the plaintiff one-half his expenses incurred in the enterprise, and, after such expenses were paid, the profits on sales of the land were to be equally divided as before.

Plaintiff further claims that he invested large sums of money in expenses both before and after the modification of his agreement with defendant, and paid large sums upon the modified agreement; but that defendant made default, and on or about August 13, 1884, refused to allow or pay one-half the plaintiff's expenses; and that about December 6, 1885, he notified the plaintiff that he would not recognize

him as having any interest or right in the contract, and refused to give him a one-half interest therein.

The plaintiff, after such notification, brought this suit against the defendant in the Manistee circuit, claiming for the expenses he had paid in the premises, and the moneys he had advanced upon the contract, under the agreement with the defendant.

The defendant pleaded the general issue. A trial of the cause was had, and the defendant prevailed.

The plaintiff brings error.

The defendant, upon the trial, did not concede the agreement made between the parties as stated by the plaintiff, but testified that he was induced by the plaintiff to make the investment he did in the lands upon the former's representations that the purchase was a good one for speculation; that the land would sell within thirty or sixty days at a large profit; that, in the arrangement he made with the plaintiff, he guaranteed that the land would sell at a large profit before it became necessary to make the second payment, and that, if it became necessary to make more payments than the first, he would furnish half the money; and that they were to share equally in the profits made.

It appears from the testimony in the case that the second payment became due in August, 1882, and, anticipating the third payment, the parties obtained a loan at the bank on their joint note of $6,907.50; that on December 26, 1882, the plaintiff made sale of one section of the land for the sum of $12,000; that each received from this sale, after paying for the land sold and a few expenses, a profit of $547.84.

The testimony further shows that the efforts of the parties to sell the remaining lands were unavailing, and that on the twenty-sixth of April, 1883, they paid the interest on the contract, to the amount of $1,871.29, each party paying his half of the same; and that this was the last payment made by either party upon the contract. At this time it would

appear each party had invested equally in the property, except that Hart had not been reimbursed for his costs incurred; and the parties still owed at the bank on their note $7,911.21.

The plaintiff presented to the defendant a bill of his expenses, under the agreement between them, as he claimed it, of $557.21, of which he requested the defendant to pay half. Over this claim a difficulty arose between the parties, which they submitted to three arbitrators, who found that the defendant should pay the plaintiff $203.91. The plaintiff then paid to the bank his half of the note, less the sum awarded for the defendant to pay him. The defendant paid his half of the note, but refused to pay the amount of the award, which, with interest, the plaintiff afterwards, on the sixteenth day of October, paid, and at the same time told the cashier of the bank to tell the defendant—

"That I washed my hands of it; that he could run the thing after this; that I had run it for three years, and put in all the expenses, and that he might put in the expenses hereafter as long as he would not pay what the board of arbitrators decided that he should pay."

After this the plaintiff told several parties he had dropped out of the contract.

The defendant then offered the property for sale to several parties, but did not sell to them, and gave testimony tending to prove that he went to Hart, and protested against his giving up the agreement, but that Hart insisted he would have nothing more to do with it, but said he would assist the defendant what he could in making sale of the property.

In November some parties applied to Hart for the purchase of the land, and asked a refusal of it for 30 days. Hart carried the proposal to the defendant, who directed him to give the refusal. The defendant's terms were finally accepted, and the defendant transferred the contract he held for the lands to the purchasers for $30,000 on the first day of December, 1885. The defendant received upon this sale, after

deducting the amount due the railroad company, from the purchase money, $3,799.18.

The testimony further shows that the plaintiff paid for expenses and interest on contract, and on the parties' note at the bank, $5,299.07, and received in profits $547.84.

The plaintiff claims that, when the defendant refused to pay the expenses found by the arbitrators due him, he became released from his agreement with the defendant, and was entitled to recover back the money he had expended; or, if his subsequent negotiation of the sale of the property should be considered a waiver of the default made by the defendant, then the plaintiff should recover the amount of his award, and one-half of what was paid to defendant on the last sale, both sums amounting to $2,103.50.

The defendant claims that under the agreement he made with Hart, notwithstanding Hart may have put more money in the venture than himself, upon the sale of the property the defendant is entitled to take out all of his investment. before any division, and is to give Hart half the profits, and, there being no profits, he owes the plaintiff nothing. He also testifies that his loss is $2,714.42.

It was under these several claims the cause was tried and submitted to the jury.

On the trial the defendant's counsel was allowed to show that the defendant, after he claims the plaintiff gave up his agreement with defendant, went to Mr. Barnes, the railroad company's agent, and offered to give up the contract, and pay something in addition to what he had paid if the company would cancel his contract. This was objected to as immaterial and irrelevant. In view of the claims submitted to the jury, I think the evidence was proper. It did no more than show the efforts made by the defendant to dispose of the property. The plaintiff makes claim for a portion of its proceeds on final disposition.

Under the theory of the defendant, and the claims made

by the plaintiff, the other testimony objected to and admitted was properly received in evidence.

Counsel for plaintiff assign error on the statement by the court to the jury of the plaintiff's version of the contract between the parties as given by the plaintiff when upon the stand. In the charge the court said:

"Mr. Firzlaff was to buy the lands, and pay $3,000 down upon them, and afterwards, if it became necessary, Mr. Hart and Mr. Firzlaff would pay the balance of the purchase money equally, and if they sold at an advance they would divide the profits; and if the land was afterwards sold at a profit, then Mr. Firzlaff was to have the $3,000 he had paid, with interest at seven per cent. taken out, and the balance divided between the parties."

In relation to the plaintiff's advancing any money upon the contract, the plaintiff testified:

"I was to pay one-half and he was to pay one-half. The condition of my making one-half of these payments, and taking an interest with him, was that he should reimburse me for one-half of my expenses."

It will be noticed that the condition upon which the plaintiff was to furnish money at all, as he states the contract, was not given to the jury. This was a hurtful omission in stating the contract as the plaintiff claimed it. If the defendant refused to pay one-half the expenses, the plaintiff was, under the plaintiff's statement of the agreement, under no obligation to make any advances upon the contract. The error upon this subject is well assigned.

Counsel for plaintiff excepted to that portion of the charge reading as follows: Referring to the expenses that had been awarded to the plaintiff by the arbitrators, the court said:

"If, then, Mr. Firzlaff refused to pay those expenses, that would be a breach of the contract, and Mr. Hart would have a right to abandon the contract, and recover his money back.

"*Mr. Dovel.* If he did it on that account ?

"*The Court.* Yes, sir. If, upon the other hand, notwithstanding the fact that there was an award made, if he refused

to carry out the contract, and abandoned the whole contract, there could be no recovery in this suit at all.

" *Mr. Dovel.* He could abandon the award as well as the contract ?

" *The Court.* Yes, sir."

While from this passage it may be a little difficult to say just what the court intended the jury should understand, still I think the language is misleading, and must be regarded as prejudicial to the rights of the plaintiff, and erroneous.

I find nothing in the record in the testimony of the defendant warranting the following statement made by the court in the charge to the jury, viz. :

"Mr. Firzlaff, on the other hand, claims that he never broke his engagement at all. He admits making the contract very much as claimed by the plaintiff, but he claims that Mr. Hart refused to carry it out, refused to make payments, although he was urged by Firzlaff to do so."

The exception to this charge was well taken. It appears from the record that neither party made payments upon the contract after April 26, 1883, nor does it appear that the plaintiff was asked by the defendant to make any.

For the errors stated the judgment should be reversed, and a new trial granted.

CHAMPLIN, J. I agree in a reversal of the judgment.

MORSE, J. I do not think this case was presented to the jury upon the right basis as to the respective rights or claims of the parties, and therefore concur in a reversal of the judgment. If the plaintiff's testimony was to be believed, the last and final arrangement was that each should pay for one-half of the land, and share equally in the profits, if any. The defendant was to pay him one-half of the expenses already incurred in and about the looking up and purchase of the land, and in trying to sell it. The defendant was to receive out of the proceeds of the sale of the land the $3,000, with interest, that he had paid when the contract for the lands was executed.

There is no doubt but, after the refusal of the defendant to pay the award of the arbitrators, the plaintiff announced his intention of throwing up and abandoning the contract, and refused for a time to do anything more about it.

If, as he claims, he afterwards waived this abandonment, and, with the consent or acquiescence of the defendant, entered into negotiations and helped sell the land, he would be entitled to one-half of the proceeds of the sale, and one-half of the expenses incurred by him.

If there was a loss upon the venture, he would be entitled to what he had paid in upon the contract, and the expenses as above stated, less one-half of the loss, which he must share with defendant.    I can find no law from the facts of the case, as stated by himself, that would authorize him to recover back from the defendant what he had paid upon the contract, without regard to the question of losses upon the same.    According to his own statement, after the sale to Salling and Hanson, and before they had settled for the purchase, he only asked to be paid one-half of the amount received over and above the amount going to the railroad company.    This is all he was entitled to under his own evidence.

In regard to the statement of facts made by the court to the jury, I think it was the duty of the plaintiff's attorneys to correct the court at the time, if he made any mistake in the statement of the plaintiff's claim as to the terms of the agreement between the parties.    If this had been done, and the court had not made the correction when suggested, it would have been error.

But when the court made the statement that the defendant claimed that Mr. Hart "refused to make payments, although he was urged by Firzlaff to do so," plaintiff's counsel were not called upon to interfere.    I also find, with my Brother SHERWOOD, no warrant in the record for this statement.

I also think that portion of the charge wherein the court

instructed the jury that plaintiff could abandon the award, as well as the contract, as misleading and prejudicial to the plaintiff's case.

There was no evidence anywhere tending to show that the plaintiff ever abandoned the award.   If the agreement was as he claimed, he had the right to abandon the contract when Firzlaff refused to pay his share of the expenses.   And the whole testimony shows that his sole reason for stating that he would have nothing more to do with the contract was on account of the refusal of Firzlaff to pay the amount of the award.

Firzlaff admits that he refused to pay the award after he had agreed to submit the matter to the arbitrators.   But he claims that he never agreed at any time to pay these expenses, but refused to do so, and that such payment upon his part was no part of the first or any subsequent agreement as to the purchase of the lands, and that he told the arbitrators as soon as they announced their decision that he would not pay it, as they had not done right.

If Firzlaff never agreed as a part of his contract to pay one-half of Hart's expenses, his refusal afterwards to abide by the award would not justify Hart in abandoning the contract.

The case, then, should have been submitted to the jury upon the plaintiff's theory, as legitimately drawn from his own testimony, that, if his story of the transaction was true, he was entitled to recover such sum as would give him one-half of the profits of the venture, if any, or, if there were no profits, such sum as would leave him loser of only half of the entire loss upon the contract, and reimburse him for one-half of his expenses.

Upon the defendant's theory, if the jury believed that Firzlaff never agreed to pay these expenses, and that Hart abandoned the contract, the plaintiff could not recover anything.

CAMPBELL, C. J., did not sit.